UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| JOSH L. BOWMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No.  2:17-CV-167-DCLC-CHS |
| | ) | |
| RANDY LEE, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Petitioner, Josh L. Bowman, a Tennessee inmate proceeding pro se, has filed a federal habeas petition pursuant to 28 U.S.C. § 2254 challenging the legality of his confinement under three counts of first-degree felony murder, one count of especially aggravated kidnapping, one count of especially aggravated robbery, two counts of aggravated burglary, and one count of employing a firearm during the commission of a dangerous felony.  Having considered the submissions of the parties, the State-court record, and the law applicable to Bowman's claims, the Court finds that the petition should be denied.

## I.     SUMMARY OF EVIDENCE & PROCEDURAL HISTORY

Bowman and Gary S. Holman entered the home of Bill and Vickie Graves and stole a safe on May 2, 2009.  *See State v. Bowman*, No. E2012-00923-CCA-R3-CD, 2013 WL 4680402, at *1-3 (Tenn. Crim. App. Aug. 29, 2013), *perm. app. denied* (Tenn. Feb. 11, 2014) ("*Bowman I*").  During the home invasion, Mr. Graves was shot by the first intruder, and Mrs. Graves engaged in a physical altercation with the second intruder.  *Id*. at *3-4.  Mr. Graves died as a result of the gunshot wound the following day.  *Id*. at *4.

Bowman was subsequently developed as a suspect and was arrested. *Id*. at \*2. After his arrest, Bowman gave a statement to police admitting to breaking into the Graves home but claiming that his co-defendant shot Mr. Graves while he struggled with Mrs. Graves. *Id*. at \*3.

A Knox County Grand Jury returned an indictment charging Bowman and his co-defendant, Gary S. Holman, with two counts of aggravated burglary, one count of employing a firearm during the commission of a dangerous felony, one count of employing a firearm during the commission of a dangerous felony when Bowman had previously been convicted of a dangerous felony, one count of especially aggravated kidnapping, one count of especially aggravated robbery, and three counts of first-degree felony murder [Doc. 8-1 p. 6-10]. The defendants were separately tried. *Bowman I*, 2013 WL 4680402, at \*1.

Prior to trial, Bowman filed a motion to suppress his statement to police, alleging his statement was coerced and not voluntarily given [Doc. 8-1 p. 37-38]. Following a hearing, Bowman's motion to suppress was denied [*Id*. at 40].

Following a jury trial, Bowman was convicted of two counts of aggravated burglary, one count of employing a firearm during the commission of a dangerous felony, one count of especially aggravated kidnapping, three counts of first-degree felony murder, and one count of aggravated robbery [*Id*. at 63-64]. In a bifurcated proceeding, Bowman pleaded guilty to the charge of employing a firearm during the commission of a dangerous felony while having prior convictions for dangerous felonies [Doc. 8-5 p. 65-69]. The trial court entered judgments and sentenced Bowman to life for each of his first-degree felony convictions [Doc. 8-1 p. 65-67]. Judgments for the remaining convictions were held pending a sentencing hearing [*Id*. at 63-64].

After a sentencing hearing, the trial court merged Bowman's aggravated burglary convictions [*Id*. at 82-83]. It also merged Bowman's employing a firearm during the commission of a dangerous felony conviction while having prior convictions with his conviction for employing

a firearm during the commission of a dangerous felony [*Id*. at 84-85]. The sentence for the employment of a firearm during the commission of a dangerous felony was set to run consecutively to Bowman's sentence for aggravated burglary [*Id*. at 84]. All of Bowman's sentences were set to run concurrently with his life sentences [*Id*. at 82-87].

Bowman subsequently filed a motion for a new trial, arguing, in part, that the trial court should have suppressed his statements to police because he had been threatened [*Id*. at 71-72, 93-95]. The trial court denied Bowman's motion for a new trial [Doc. 8-2 p. 96, 100].

On appeal, the Tennessee Court of Criminal Appeals ("TCCA") held that the trial court properly denied Bowman's motion to suppress his statement to police. *Bowman I*, 2013 WL 4680402, at *10. However, the TCCA held that the trial court erred when it failed to instruct the jury on the charge of especially aggravated kidnapping pursuant to *State v. White*, 362 S.W. 3d 559 (Tenn. 2012). *Id*. at *15. It reversed Bowman's conviction for especially aggravated kidnapping and remanded the case for a new trial on that offense. *Id*. at *16. The Tennessee Supreme Court denied Bowman's application for discretionary review [Doc. 8-13].

On remand, Bowman pleaded guilty to especially aggravated kidnapping and was sentenced to 15 years to be served concurrently with his life sentence [Doc. 8-14 p. 29-30].

Thereafter, Bowman filed a pro se petition for post-conviction relief [*Id*. at 4-19]. Appointed counsel subsequently filed an amended petition for post-conviction relief [*Id*. at 23-25]. Following a hearing, the post-conviction court found Bowman received ineffective assistance of counsel when trial counsel advised him to plead guilty to employing a firearm during the commission of a dangerous felony with prior convictions for dangerous felonies, and it set aside Bowman's conviction for that offense [*Id*. at 33-37]. The post-conviction court denied relief for all of Bowman's other claims [*Id*. at 37]. The State appealed to the TCCA, arguing that the post-conviction court erred when it found that trial counsel was ineffective for advising Bowman to

plead guilty to employing a firearm during the commission of a dangerous felony while having

prior dangerous felony convictions [Doc. 8-17 p. 12-16]. Bowman cross-appealed, arguing that

trial counsel was ineffective for failing to investigate and object to the composition of the jury

venire [Doc. 8-16 p. 16-18]. The TCCA affirmed the judgments of the post-conviction court.

*Bowman v. State*, No. E2016-01028-CCA-R3-PC, 2017 WL 1449232, at *1 (Tenn. Crim. App.

Apr. 24, 2017), *perm. app. denied* (Tenn. Aug. 16, 2017) ("*Bowman II*"). However, the TCCA

found that Bowman's conviction for employing a firearm during the commission of a dangerous

felony survived, even though the offense with which it was merged was dismissed, and it remanded

the case for the post-conviction court to enter a judgment for that offense. *Id*. at *8. The Tennessee

Supreme Court denied discretionary review of this decision [Doc. 8-20].

On August 28, 2017, Bowman filed a petition for writ of habeas corpus under 28 U.S.C. §

2254, raising the following claims for relief, as paraphrased by the Court:

> Claim One: The trial court failed to suppress Bowman's coerced statement to police.
>
> Claim Two: Trial counsel was ineffective for failing to object to the jury venire as being unrepresentative of the racial makeup of the county's population.

[Doc. 1 p. 5-6]. On April 10, 2018, the Court ordered Respondent to file a response to the petition,

and Respondent complied by filing an answer on June 6, 2018 [Doc. 13]. Bowman filed a traverse

to the answer on June 28, 2018 [Doc. 14].

## II.     LEGAL STANDARD

The Court's review of the instant petition is governed by the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any

claim adjudicated on the merits in a State court unless that adjudication (1) resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established United States

Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of

facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *See id.* at 407-08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable − a substantially higher threshold."); *Williams*, 529 U.S. at 410-11. This standard will allow relief on a federal claim decided on its merits in State court only where the petitioner demonstrates that the State ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). When evaluating the evidence presented in State court, a federal habeas court presumes the correctness of the State-court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## III. COERCED STATEMENT (CLAIM ONE)

### A. Bowman's Allegations

Bowman alleges that, during his arrest, police threw him to the ground, put a gun to his head, told him "I should do to you what you did to that old man," and threatened that he would not see his children again if he did not cooperate with the police [Doc. 1 p. 5]. He claims that he told

5

officers taking his statements about these threats, but that he could not identify the arresting officer because the officer was not wearing a uniform or identifying insignia [*Id*. at 5, 17].

**B.      Pre-trial Suppression Motion**

Prior to trial, Bowman filed a motion to suppress his statement to police on the basis of police coercion [Doc. 8-1 p. 37-38].  At the suppression hearing, Detective Yarnell, the officer who took Bowman's statement, acknowledged that when he asked Bowman to initial the portion of the *Miranda*[1] rights waiver form which stated no threats had been made, Bowman stated, "But I told you about that.  You know, they did that to me." [Doc. 8-2 p. 34].  Detective Yarnell testified that he was not aware of any threats that had been made against Bowman, and that he did not recall Bowman's making a statement that someone had put a gun to his head or told him he might not see his children again if he did not do what the officers told him to do [*Id*. at 34-39].

Other officers present during Bowman's arrest also testified at the suppression hearing. At least one officer had his weapon drawn during Bowman's arrest [*Id*. at 47].  However, these officers testified that they did not threaten Bowman, throw him to the ground, put a gun to his head, or tell him he would never see his children again if he did not comply with the officers' commands [*Id*. at 42-52].  Rather, the officers' testimony was that they ordered Bowman to lay on the ground when he came out of the house, and that Bowman complied [*Id*.].

Bowman testified that on the day of his arrest, he stepped outside of his home and saw officers running toward his front door [*Id*. at 61].  He testified that one officer grabbed him, threw him on the ground, placed a gun to his head, and told him, "I should do to you what you did to that

---

[1]  In *Miranda v. Arizona*, the Supreme Court determined that the Fifth Amendment's prohibition against compelled self-incrimination requires that custodial interrogations be preceded by advice to the accused, such as the right to remain silent and the right to request the presence of an attorney. *See Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966).

old man," and "You need to do what they tell you to do, or you – you will not see your children again" [*Id*. at 61-62].

After hearing this evidence, the trial court first determined that Bowman was properly advised of his *Miranda* warnings prior to making any statement implicating himself in the crime [*Id*. at 86]. It otherwise determined that Bowman's testimony was not credible, and that there was no evidence in the record that an officer had threatened Bowman [*Id*. at 86-87]. The court also concluded that "even if a threat had been made to [Bowman by the arresting officers], the [interrogating] officers in this case determined that he made this statement knowingly and voluntarily" [*Id*. at 87]. The trial court, therefore, denied Bowman's motion to suppress his statement to police [*Id*.].

The TCCA affirmed the trial court's denial of Bowman's suppression motion on direct appeal. *See Bowman I*, 2013 WL 4680402, at \*6, \*10. In rejecting this claim, the TCCA noted the trial court discredited Bowman's testimony that he had been threatened and found that nothing in the record preponderated against that finding. *Id*. at \*10. It also acknowledged that Bowman was twenty-seven years old at the time he gave his statement; he had an extensive criminal history; he was a high school graduate and could read; nothing in the record indicated that his interview was repeated or prolonged; and there was no evidence that he was detained for an extensive period of time before his interview, or that he was intoxicated or ill at the time. *Id*. Additionally, the TCCA noted that the officer who took Bowman's statement provided him with cigarettes and water. *Id*.

B.      Law and Analysis

The Fifth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, provides criminal defendants a privilege against compulsory self-incrimination. U.S. Const. Amend. V ("No person . . . shall be compelled in any criminal case to

7

be a witness against himself[.]”); *Malloy v. Hogan*, 378 U.S. 1, 6 (1963) (holding Fifth Amendment is applicable to the States). An accused subject to a custodial interrogation may waive this privilege, provided the waiver is voluntarily, knowingly, and intelligently executed. *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). A valid waiver, therefore, prevents a statement from being “compelled” in the constitutional sense. *Colorado v. Spring*, 479 U.S. 564, 573 (1987) (citation omitted).

Whether a defendant has voluntarily waived his privilege against self-incrimination has two dimensions: (1) the waiver must be a free and deliberate choice, as opposed to the result of intimidation, coercion, or deception; and (2) the waiver “must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.” *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The voluntariness of a defendant's waiver is based on the totality of the circumstances. *Id.* This inquiry takes into account “the background, experience, and conduct of the accused.” *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Relevant factors may include the age, intelligence, and education of the accused; whether he was advised as to his constitutional rights; the length of questioning and/or detention; and the use of physical punishment, such as the deprivation of food or sleep. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

This Court notes that it does not have “license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by [it].” *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Instead, Bowman bears the burden of rebutting the presumption of correctness that accompanies credibility determinations by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). He has not presented any such evidence, and therefore, he has not rebutted the State court's credibility determination in this cause. Moreover, even accepting Bowman's allegations that he was threatened at the time of his arrest as true, he did not make any incriminating

statement from the time of the alleged threat until he received his *Miranda* warnings, and there is

no question that Bowman was informed of his *Miranda* rights prior to giving his statement.

Therefore, the Court finds that the decision rejecting this claim is not contrary to, nor is it an

unreasonable application of the clearly established law governing the voluntariness of custodial

statements, nor was it based on an unreasonable determination of the facts in light of the evidence

presented to the State courts. Accordingly, Bowman is not entitled to relief on this claim.

## IV.    INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL (CLAIM TWO)

### A.    Bowman's Allegations

Bowman claims that trial counsel was ineffective for failing to object to the venire on the

basis that it was not representative of the county's population, as the community was over 16

percent African American, but only one African American person was "called to the court for

venire for petit jury" [Doc. 1 p. 6].

### B.    State-Court Proceedings

Bowman testified at his post-conviction hearing that the venire in his case only included

one African American, and that person was ultimately excused, leaving him with an all-white jury

[Doc. 8-15 p. 6]. He testified that venire members were randomly selected from a list provided by

the Department of Safety that included people who had driver's licenses and identification cards

[*Id.* at 7]. Bowman claimed that the venire did not represent a cross-section of the community

[*Id.*]. On cross-examination, however, Bowman admitted that he never saw the larger venire; he

only saw the prospective jurors who were brought into the courtroom prior to trial [*Id.* at 10-11].

The Knox County jury coordinator testified that sending calls for jury duty was an

automated process which used the Department of Safety database and randomly selected jurors

from the county's residents with a driver's license or State identification card [*Id.* at 32-33, 37-

38]. This process does not reveal the race of those selected [*Id.* at 33]. The coordinator stated that

the court would typically ask for around 1200 notices to be sent for criminal court and around 100 notices to be sent for circuit court [*Id.* at 37-38].

Bowman's trial counsel testified that while there were a "couple of minorities" in the jury panel, he did not think the jury venire reflected the community's racial composition [*Id.* at 26-28, 30]. He stated he did not believe he could raise a successful challenge on that basis, however [*Id.* at 28-30]. Counsel stated that given the strength of the State's case, he did not think the racial composition of the jury was determinative at trial [*Id.* at 29-30].

The post-conviction court credited Bowman's testimony that he was convicted by an all-white jury [Doc. 8-14 p. 30]. The court found, however, that there was "no proof that the entire panel only included one African American," and it noted that trial counsel believed there were "a couple of African Americans in the venire" [*Id.*]. The post-conviction court denied relief, noting there was no evidence there was a disparity in the number of African Americans in the jury pool compared to the community, and that evidence at the post-conviction hearing had established that there was no systematic exclusion of any racial group [*Id.* at 32-33].

In his brief to the TCCA, Bowman acknowledged that he could not demonstrate that he was prejudiced as a result of the jury's makeup, or that the allegedly improper procedures resulted from purposeful discrimination or fraud [Doc. 8-16 p. 17-18]. Citing the above-presented evidence, the TCCA concluded that trial counsel was not ineffective for failing to challenge the venire. *Bowman II*, 2017 WL 1449232, at *8-9.

C.     **Law and Analysis**

Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a habeas petitioner to satisfy a two-prong test to warrant federal habeas corpus relief: (1) he must demonstrate constitutionally deficient performance by counsel, and (2) he must demonstrate actual prejudice as a result of such

ineffective assistance. *Strickland*, 466 U.S. 668 (1984). Deficiency is established when a petitioner can demonstrate that counsel's performance falls below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*. at 687-88. A reviewing court's scrutiny is to be highly deferential of counsel's performance, with an effort to "eliminate the distorting effects of hindsight." *Id*. at 689. In fact, counsel is to be afforded a presumption that his actions were the product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment. *Id*.

Prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome. *Id*. at 694. However, an error, even if professionally unreasonable, does not warrant setting aside the judgment if it had no effect on the judgment. *Id*. at 691.

On habeas review, the issue for the district court is not whether the *Strickland* standard is met, but rather, whether the State-court's decision that *Strickland* was not met warrants relief under AEDPA standards. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Accordingly, when a *Strickland* claim has been rejected on its merits by a State court, a petitioner "must demonstrate that it was necessarily unreasonable" for the State court to rule as it did in order to obtain federal habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

Under the Sixth Amendment, a jury must be drawn from a fair cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 527-28 (1975). Jury selection processes of a state may not systematically exclude distinctive groups of the community from the jury pool. *Duren v.*

*Missouri*, 439 U.S. 357, 363-64 (1979).  To establish a prima facie case that jury selection has violated the fair cross-section requirement, petitions must show "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from the juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id*. at 364.

Here, as the record reflects, Bowman only saw those potential jurors brought into the courtroom for jury selection and did not see the entire jury venire.  Moreover, he cannot demonstrate any systematic exclusion on the basis of race in the jury-selection process.  Indeed, as the state court noted, the jury venire was composed of a random selection of persons from a Tennessee Department of Safety database without consideration of race or gender.  He also did not introduce evidence of "underrepresentation."  In fact, there was no evidence presented at the post-conviction hearing regarding the racial makeup of Knox County, or whether the jury venire accurately reflected that makeup.  In other words, nothing in the record shows that the jury venire did not reflect a fair cross-section of the community, or that any alleged failure was the result of a systematic exclusion of a particular race from the jury venire.  Therefore, Bowman has failed to demonstrate that counsel performed deficiently by failing to object to the jury's composition, or that he was prejudiced as a result.

Accordingly, the Court finds that Bowman has failed to demonstrate that the TCCA's decision rejecting this claim is contrary to, or involves an unreasonable application of, *Strickland* and its progeny, or that it was based upon an unreasonable determination of facts in light of the evidence presented.  Bowman is not entitled to relief on this claim.

## V.	CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

## VI.	CONCLUSION

Bowman has failed to demonstrate an entitlement to federal habeas relief. Therefore, his petition for a writ of habeas corpus will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**. A certificate of appealability from this decision will be **DENIED**.

Further, the Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE ORDER WILL ENTER.**

**SO ORDERED:**

> s/Clifton L. Corker
> United States District Judge